492 P.2d 754

UNITED STATES FIDELITY AND GUAR-
ANTY COMPANY, a corpo-
ration, Appellant,

v.

Stan HANSON and Arizona Title Insurance
& Trust Company, a corpora-
tion, Appellees.

No. 1 CA-CIV 1635.

Court of Appeals of Arizona,
Division 1.
Department B.

Jan. 18, 1972.

Rehearing Denied Feb. 10, 1972.

Review Denied March 21, 1972.

Snell & Wilmer, by John E. Lundin, James A. Honer, Phoenix, for appellant.

Charles A. Stanecker, Phoenix, for appellee Stan Hanson.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Wilbert G. Anderson, Phoenix, for appellee Arizona Title Ins. & Trust Co.

EUBANK, Judge.

This appeal involves the question of whether a written "irrevocable" instruction or order to an escrow agent constitutes an assignment of escrow funds which would take priority over a subsequent garnishment of the escrow agent by a creditor of the assignor.

In this opinion United States Fidelity and Guaranty Company, plaintiff in the trial court and appellant here, will be referred to by the initials "USF&G"; C. E. Givens and Mildred I. Givens, his wife, defendants in the trial court, will be referred to as "Givens"; and Arizona Title Insurance & Trust Company, garnishee-defendant, escrow agent and appellee, will be referred to as "Arizona Title".

The facts are not in dispute. On or about January 29, 1970, USF&G instituted an action against Givens, and others, for damages sustained by it as a result of alleged fraudulent representations made by Givens and others.

Subsequent to the filing of the complaint, Givens entered into a contract for the sale of their residence. An escrow was established for this purpose at Arizona Title. The escrow was to close on or about March 26, 1970. The sale proceeds due Givens at the close of the escrow were to

be $21,560.80. On March 24, 1970, USF&G caused a writ of garnishment to be served upon Arizona Title seeking to reach the sale proceeds due Givens under the escrow.

Arizona Title, by its answer to USF&G's writ of garnishment, disclosed that it was holding the sum of $21,560.80 to be disbursed for Givens upon close of escrow. The answer further disclosed that the right of Givens to the sale proceeds of sale of their residence was subject to an "irrevocable instruction" by Givens, dated February 27, 1970, directing Arizona Title to pay Stan Hanson a portion of the sale proceeds.

On or about April 1, 1970, USF&G filed a Tender of Issues in Garnishment controverting the answer of Arizona Title, and asserting that its answer, as garnishee-defendant, was incorrect insofar as it alleged or implied that the "irrevocable instruction" of February 27, 1970, in favor of Hanson, was prior in right to the writ of garnishment served on Arizona Title by USF&G on March 24, 1970.

At this point Stan Hanson was permitted to intervene in the garnishment proceedings to protect his asserted interests as assignee of the sale proceeds. On April 14, 1970, Hanson filed a Response as Intervenor in Garnishment to Plaintiff's Tender of Issue alleging that the "irrevocable instruction" was equivalent to an assignment, and therefore prior in right and time to the garnishment filed by USF&G.

On September 23, 1970, USF&G filed a motion for summary judgment based on its Tender of Issues in Garnishment. Hanson responded and filed a cross-motion for summary judgment. On January 8, 1971, the trial court entered its judgment and order denying USF&G's motion for summary judgment, granted Hanson's motion for summary judgment, and ordered Arizona Title to pay from the funds held by it in the Givens' escrow those sums which were the subject of the "irrevocable instruction" in favor of Hanson. This appeal by

USF&G from the entry of the summary judgment followed.

USF&G contends that the proceeds of the sale are subject to its garnishment which it claims, " . . . is prior in right and superior to appellee Hanson's claim to a part of such proceeds of sale . . .." This contention is based upon the argument that the February 27, 1970, "irrevocable instruction", *infra,* was in fact merely a supplemental escrow instruction which was " . . . simply in form and effect a request or order by Givens to Arizona Title to pay funds due Givens directly to a third party creditor." USF&G's theory is bottomed on the opinion of the U. S. District Court of Arizona, In re Mesa Steel Corp., 229 F.Supp. 669 (1964), which held that a supplemental escrow instruction, similar in content to the escrow instruction at issue here, was legally revocable by the party making the instruction, and hence subordinate to certain creditors' rights. We have reviewed the *In re Mesa Steel* opinion and reject it as authority for the reason that it involved a bankruptcy action in which the trial judge made no effort whatever to determine and apply the substantive law of Arizona either to the construction of the escrow agreement or to the supplemental order.

On the other hand Hanson contends that the February 27, 1970, letter constitutes an "equitable assignment" in his behalf under Arizona law and being irrevocable it is prior in right to the rights created by the subsequent garnishment proceeding. We agree with Hanson's contention and affirm the summary judgment of the trial court for the reasons hereinafter stated.

Although the Restatement of Contracts §§ 148–177 (1932), and 3 Corbin Contracts §§ 856–922 (1960), by implication, reject the term "equitable assignment" as unnecessary with regard to modern assignment practice and prefer merely the single word "assignment," the older cases, including our own, continue to use the term. For

example, in Barnes v. Shattuck, 13 Ariz. 338, 114 P. 952 (1911), our Supreme Court said:

" . . . To constitute an equitable assignment good as between the assignor and assignee, it is not essential that the debt should have been earned or the fund be *in esse* at the time of the assignment, or that notice be given the present or future holder of the fund. The intent of the parties to create the lien being apparent, it is sufficient that there be a reasonable expectancy that the debt will be fully earned and the fund come into existence. Sykes v. First National Bank, 2 S.D. 242, 49 N.W. 1058; Mitchell v. Winslow, 2 Story, 630, 17 Fed.Cas. 527 (No. 9673).

Whether the agreement in this case constitutes an equitable assignment of that portion of Barnes & Martin's fee in question is dependent upon the intent of the parties as evidenced by the terms of the agreement in the light of all the surrounding circumstances. Ingersoll v. Coram, *supra.*" (13 Ariz. at pp. 343, 344, 114 P. at p. 954).

The Court held that such circumstances existed and that the words of Judge Barnes that "I will give you one-third of the fee" were intended by him as an equitable assignment of the fee to be collected in the Shattuck cases rather than as a personal debt of his.

In Allen v. Hammon Lumber Co., 44 Ariz. 145, 34 P.2d 397 (1934), (noted in Anno. 9 A.L.R.2d 301), our Supreme Court established the "true test" of an equitable assignment to be whether the debtor is justified in paying off or satisfying the debt to the person claiming to be the assignee. See also, 3 Williston Contracts § 428 (3rd ed 1960). The *Allen* court noted that an equitable assignment could be oral, in writing, or partly in writing and partly oral, and said:

" . . . Any language, however, informal, which shows an intention of an owner of a chose in action to transfer it so that it will be the property of the transferee will amount to an equitable assignment if sustained by a sufficient consideration. In 5 C.J. 927, it is said:

'An order drawn on a debtor, payable out of a debt or fund in or coming into his hands, will operate as an assignment of either the whole or part of such debt or fund, depending on whether the order is for the whole or for a part thereof, if the order is accepted by the drawee . . . .'

"There are many cases when orders very similar to the one in question are held to be assignments. (citations omitted)." (44 Ariz. at p. 148, 34 P.2d at p. 399).

In Allen, the court held that an instruction or order to an escrow agent which read:

"Escrow Instructions
Phoenix, Arizona, 9/5, 1930

The Coggins Title, Insurance and Trust Co.,

Please pay Hamman Lumber Company $590.00 @ 8% @ $20.00 per mo. from funds received on Tribolett-Barker 2nd mtg.

[Signed]   J. W. Barker."

constituted an equitable assignment by Barker to Hammon Lumber Co. on the basis of the intention to make an assignment found in the circumstances surrounding the transaction. Of interest is 6 Am.Jur.2d, Assignments, § 89 p. 271 (1963), dealing with an order drawn on a part of a fund (which was a problem at common law but not at equity), which states:

"In order to operate as an equitable assignment, the order must designate specifically the fund or debt out of which payment is to be made, and it must distinctly appropriate a part of such fund or debt. It must appear that the parties intended an actual transfer and not a mere authority to the person to whom the order was directed to pay, such authorities being revocable. Anything which clearly manifests the intention of the creditor to make a specific

appropriation of a particular thing to a particular purpose and a willingness on the part of the transferee to accept such appropriation may take effect as an equitable assignment." (Footnotes omitted).

*See also,* Restatement of Contracts § 163 (1932), and 3 Corbin on Contracts § 880 pp. 535–540 (1960).

It appears that under Arizona law a supplemental escrow instruction or order can constitute a valid assignment if the foregoing criteria are met.

Keeping the foregoing in mind, we turn back to the facts in the instant case. Givens' "Irrevocable Instruction" to Arizona Title reads as follows:

"February 27, 1970

Arizona Title Insurance and Trust Company

611 N. Old Scottsdale Road

Scottsdale, Arizona 85251

RE: Escrow No. 269378

Gentlemen:

"The undersigned irrevocably instructs you as Escrow Agent to pay Stan Hansen of Las Vegas, Nevada, the sum of $8,000.00 plus interest at 7% per annum, and the sum of $6,000.00 plus interest at 8% per annum, per the terms and conditions as set forth on Demand Notes, No. 1 and No. 2. You are further advised that Stan Hansen will submit a final statement as to the amount in full due on both notes and you are relieved from all liability and/or responsibility as to said amounts.

"The above sums are to be paid from Sellers proceeds due under the terms of this escrow and the remainder of said proceeds are to be paid to us, all at close of escrow.

ACCEPTED AND APPROVED:

/s/ C. Eddie Givens
_____
Seller

/s/ Mildred I. Givens
_____
Seller            "

Several days after the receipt of the above instruction by Arizona Title, on March 2, 1970, Hanson wrote Arizona Title forwarding the two Givens' notes, payable to him, and ordered the escrow officer to hold $15,907.40, principal and interest from the Givens' escrow number 269378 in full payment of the notes.

Under these circumstances, and no others are advanced or suggested by any party to this appeal, is Arizona Title (the debtor), on behalf of the purchaser of the Givens residence, justified in paying off or satisfying the debt to the person claiming to be the assignee (Hanson)? Our answer is affirmative. The instruction or order is by its terms "irrevocable", and Arizona Title is specifically relieved of all liability and responsibility arising from acting on the order. It designates a part of a specific fund to be paid to Hanson which was *in esse* at the time of the receipt of the instruction or order and contingent only upon the escrow closing date. The assignee, Hanson, forwarded the "final statement" several days later, together with Demand Notes 1 and 2, requesting that they not be released until paid in full indicating his acceptance of the transfer of part of the escrow fund to him in satisfaction of the notes. We believe that this is sufficient. *See,* Restatement of Contracts § 163(1) (1932).

It should be pointed out that no claim was made by USF&G that the transfer was made to defraud creditors.

We hold that Givens effectively assigned their interest in the escrow fund in the sum of $15,907.40 to Hanson, and that this assignment was prior in time and right to the writ of garnishment caused to be issued by USF&G.

Judgment is affirmed.

HAIRE, P. J., and JACOBSON, J., concur.