# Wells to use *v.* Philadelphia, Appellant.

*Principal and surety — Municipal contract — Suit by surety against city—Completion of contract—Readvertisement—Retained percentages — Subrogation — Parties — Federal court receiver — Waiver of delay and damages—Liquidated damages—Penalty—Act of June 1, 1885, P. L. 37.*

1. A receiver appointed by the federal court need not be made party plaintiff, in an action in a state court, where his appointment did not authorize or oblige him to sue, or give him any authority over suits instituted, and where nothing had been adjudicated in the federal court that would be a barrier to an action without him.

2. Where two claimants appear for the same fund against a municipality, and the latter defends on the merits and the law in the trial of one of the cases, the municipality may protect itself against the other claimant,—by notice to appear as party defendant, and thus determine the second claimant's status as well as the liability of the city under the general contract.

3. Where two claimants appear for the same fund against a municipality, they may institute separate actions, and the fact that one is the surety who completes the work under a contract, will not defeat his right to sue.

4. A city is not bound to recognize partial assignments of contracts.

5. When a municipal contractor defaults, the surety is obliged to complete the contract or respond under the bond. In completing

the work it exercises its right under the contract as party originally alternately bound by its terms.

6. Such relation is a continuation of the original contract. The surety, under the contract, succeeds to the rights of the defaulting contractor.

7. Retained percentages and the balance due on the contract become the property of the surety, its relation dating back to and even with the property owners.

8. From this fund it is entitled to sufficient to indemnify itself against all loss on account of the contract. The contractor cannot, by assignment, deprive it of this right.

9. Under such circumstances a surety is not a partial assignee.

10. It is not a new contract requiring advertisement under the Bullitt Bill of June 1, 1885.

Argued January 21, 1921. Appeal, No. 235, Jan. T., 1921, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1918, No. 5634, on verdict for plaintiff, in case of Mark P. Wells to use of Southwestern Surety Insurance Co. v. Philadelphia. Before MOSCHZISKER, C. J., WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for balance for construction of certain buildings under municipal contract. Before FERGUSON, J.

The opinion of the Supreme-Court states the facts.

Verdict and judgment for plaintiff for $42,850.55. Defendant appealed.

*Error assigned,* amongst others, was refusal of judgment n.. o. v.

*William C. Wilson,* Assistant City Solicitor, with him *David J. Smyth,* City Solicitor, for appellant.—The city is not bound to recognize a partial assignment: Phila.'s App., 86 Pa. 179; Geist's App., 104 Pa. 351; Vetter v. Meadville, 236 Pa. 563.

The surety company has no standing as assignee of the contract between Wells and the city.

There is no contract between the surety company and the city: Hepburn v. Phila., 149 Pa. 335; Smart v. Phila., 205 Pa. 329; McManus v. Phila., 201 Pa. 619; Union Paving Co. v. Phila., 263 Pa. 577.

Liquidated damages can be enforced: Malone v. Phila., 147 Pa. 416; York v. York Rys. Co., 229 Pa. 236; Egolf v. York City, 246 Pa. 455.

The city did not waive the claim for liquidated damages.

*Albert L. Moise,* for appellee.—Damages for delay may be imposed only by director and architect: Conneaut Lake Agricultural Assn. v. Pittsburgh Surety Co., 225 Pa. 592.

Under the evidence, the city must be considered to have waived the time limit, and all right to liquidated damages: Phila. v. Tripple, 230 Pa. 480; Pressy v. Mc-Cornack, 235 Pa. 443; Coryell v. DuBois Boro., 226 Pa. 103; Ferro-Concrete Co. v. Northampton Co., 245 Pa. 64.

OPINION BY MR. JUSTICE KEPHART, March 7, 1921:

Use-plaintiff, the Southwestern Surety Insurance Company, hereinafter called the insurance company, was surety on two bonds given to protect the city against any loss it might sustain by reason of the failure of Mark P. Wells to complete, according to contract with defendant, the erection of certain buildings to be used by the Philadelphia Home for Feeble Minded. Wells and his assignees did not complete the buildings, and city of-ficials called upon the insurance company to finish them. This was undertaken and the buildings erected, at a cost in excess of the contract price, including amount paid to subcontractors, for all of which one of the bonds was liable. Part of the balance due on the contract was paid plaintiff and this action was brought to recover the remainder, including retained percentages, with interest; from a verdict and judgment in the plaintiff's favor, defendants appeal.

Prior to the trial in the court below, proceedings had been instituted in the local federal court relative to the contract between Wells, his assignees, the Wells Construction Co., and Clark, wherein the city and the insurance company were named as parties. As stated by that court, since this proceeding, "directed by the course of events and partly through mere drift, has taken such a wandering course," it was suggested a receiver be appointed to collect and receive the money. No formal decree appointing such officer was presented and the record in that court was excluded in this trial. Defendant complains this was error, and we will consider the relevancy of the record in connection with the matters here urged by appellant.

It was not essential to the use-plaintiff's right to recover that the receiver, even if appointed, be named as party-plaintiff; his appointment did not authorize or oblige him to sue, nor give him any authority over suits instituted. The claim against the city was to reimburse the use-plaintiff within the limits of the contract price for the balance of moneys expended in the completion of the buildings and in satisfying the claims of subcontractors. The city had ample means at hand to protect and safeguard its rights without such receiver, not only against any wrongful claim made by the use-plaintiff, but also against any possible duplication of payment to Wells or the Wells Construction Company, or even the receiver; moreover, it could have had certain basic facts in issue determined in this litigation, whether such litigation resulted favorably to plaintiff or defendant. If plaintiff has, by prior engagement, dealt with others with respect to the identical sums here recovered, so that it could not in equity receive them, the city, with full knowledge, under the order of the federal court, will pay as directed; there the receiver may become an important party—the federal court will determine that question; but, as between use-plaintiff and defendant, the present litigation is a distinct adjudication by a

competent state tribunal of the relative rights involved, and it is presumed it was prosecuted with the utmost vigor to recover all that was due. We are not impressed with the argument of possible collusion between the parties. The same reason might be urged had the receiver sued for use-plaintiff. The record of the federal court was, therefore, not helpful in ascertaining their rights in a state tribunal; nothing was adjudicated in the former court and no litigation was there instituted that would be a barrier to the present action; the opinion of Judge DICKINSON in the federal court clearly indicates the status of the case there pending.

That Wells or the Wells Construction Co. had instituted suit in Philadelphia County against this same defendant for the wrongful abrogation or annulment of contract, and for a balance that apparently involved a part of the fund here claimed by the insurance company, would not, for the reasons above mentioned, prevent use-plaintiff from litigating its demand in its own right.

The city is not bound to recognize partial assignments of contracts (Philadelphia's Appeals, 86 Pa. 179; Vetter v. Meadville, 236 Pa. 563, 565), but use-plaintiff does not appear as a partial assignee of the balance due on the contract or of the retained percentages. When default on the contract was declared against Wells and those under him, the surety was called upon to complete the contract in accordance with the obligation assumed by it with the city; the surety, on electing to complete, stood in a new relation to the contract. It was in direct relation to defendant as a party contracting to complete the work, becoming so on the contractor's default. In agreeing to finish the work, it exercised its rights under the contract and bond, stepping into the shoes of the contractor, operating under the contract as though a party originally alternately bound by its terms: See Phila. v. Nichols Co., 214 Pa. 265, 273. It was not a new engagement but a continuation of the old one, wherein the surety succeeded to all the rights of the contractor

under the contract, as well as liabilities to the owner thereunder. As to any money retained, the surety then stands to that fund in the same position as the owner of the property to which the contract relates. The surety's relation, through compulsion (default), dates even with the owner's relation. From this fund and the unpaid contract price it is entitled to sufficient to save itself from loss on its suretyship engagement; nor can the contractor, by assignment or otherwise, deprive it of this right (Watterson v. Owens River Canal Co., 25 Cal. App. 247, 143 Pac. 90; American Bonding Co. v. Regents of University of Idaho, 11 Idaho 163, 181, 185, 81 Pac. 604; Cleveland, etc., Ry. Co., v. Moore, 170 Ind. 328, 366, 82 N. E. 52, 84 N. E. 540; and see School District of Beatrice v. Thomas, 51 Neb. 740, 71 N. W. 731; Labbe v. Bernard, 14 L. R. A. (N. S.) 457 and note, 196 Mass. 551, 82 N. E. 688; 21 R. C. L. 1113; 9 C. J. 857; 32 Cyc. 233; St. Peter's Catholic Church v. Vannote, 66 N. J. Eq. 78; Prairie State Bank v. United States, 164 U. S. 227); therefore the authorities, forbidding partial assignments of contracts, are not in point, nor does the provision in the contract as to assignments apply. Plaintiff had a right to sue for the balance unpaid and the retained percentages. A different question would arise if the original default had been declared without cause. Assuming the cause was a lawful one, the city, on the surety's assumption of the work, then dealt with, and held its grip on, the insurance company through the contract and not through the bond. Had the insurance company decided at its option not to finish the work, it would have responded for any loss to the city under the bond (see Central Trust & Savings Co. v. Henry Kraan Furniture Co., 65 Pa. Superior Ct. 339); but the points to be emphasized are that, in cases of defaulting contractors, where the surety elects to finish the work, the surety succeeds to all rights of the contractor under the contract as a party originally bound in the alternate (Madison Bank v. School Dis-

trict, 77 Neb. 570), and it is not necessary, for a continuance of the contract, to proceed by readvertisement and reëxecution as required for a new contract under the Act of June 1, 1885, known as the Bullitt Bill.

The original contract provided for the payment of $50 per day as liquidated damages for delay in the completion of the contract, if it extended over two hundred working days from the date of the notice to commence. This clause was not a penalty and could be enforced as written (Malone v. Phila., 147 Pa. 416), and the proper authorities had power to enforce it. While there was some inconsistency between specifications and contract, they should be read together, and when this is done the liquidated damages to be collected were to be fixed by the director of public health and charities and the architect. To enforce a claim for such damages, this stipulation should be followed. These officers were the persons entrusted by all parties to fix the amount, and, as nothing was done or intended to be done by them, and as there was sufficient evidence to show a waiver of the claim by the city, the damages cannot now be imposed. We have not only a waiver as to the time of performance but a waiver as to the claim for damages. It is true that a waiver of delay is not necessarily a waiver of damages. A waiver of the provision of the time of performance does not necessarily waive the owner's claim for damages by reason of the failure to perform in time, as the owner may grant or refuse to grant an extension of time, irrespective of damages resulting therefrom; and the mere fact that the owner permits the builder to continue the work, and makes payment thereon,—although this may constitute a waiver as to the time in which the work should have been completed,—would not necessarily be a waiver as to the owner's rights to recover damages for delay; and the acceptance of the work would not alter this: 9 Corpus Juris 792. Care should be taken to distinguish in our cases between specific acts evidencing waiver and the general rule as here indicated. The

owner should not be held to have waived the claim for damages merely because he does not assert his right or makes payment on account of the work done after the time for completion. He should not be penalized for being considerate—as is often the case in delayed building. While the city was not to be deprived of making any legal defense to the architect's certificates and estimates, the defense now set up is not a legal defense.

The evidence as to the cost of completing the work was entirely proper, and, though possibly the cost was not mentioned in plaintiff's statement, defendant presents no record to take advantage of a variance. The right to retained percentages arises not only under the contract but in the application for bonds. The city will not be prejudiced by paying under the contract, as it is not a case of subrogation but one of contract. Attention is called to McKallip v. City of Altoona, 265 Pa. 192, 198.

The judgment of the court below is affirmed.