82 N.J. Super. 493 (1964)
198 A.2d 128
ROBERT J. HAMILTON, PLAINTIFF-APPELLANT,
v.
SIDNEY SCHWADRON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 13, 1964.
Decided March 5, 1964.
*494 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Albert F. McGee, Jr., attorney for appellant.
Mr. Joseph B. Kauffman, attorney for respondent.
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff Robert J. Hamilton appeals, with leave of this court, from an interlocutory order quashing a writ of capias ad respondendum and discharging defendant Sidney Schwadron from civil bail.
In Hamilton's affidavit verifying his complaint it is alleged in substance: On October 11, 1962 plaintiff was induced to purchase a lady's diamond ring from Schwadron for the sum of $6,500. He relied upon defendant, the seller, who held himself out to be an expert in diamonds and who represented that the ring was readily resalable on the retail market for $8,000 to $9,000. The purchase price was paid by cash of $3,500 and a ring delivered in trade at an agreed value of *495 $3,000. A subsequent appraisal revealed that the ring he had purchased was worth only $5,500. On January 29, 1963 plaintiff delivered it back to Schwadron for the purpose of receiving from him, on or before January 31, 1963, a refund of $6,500 or a diamond ring having a true value of that amount; otherwise, the ring was to be returned. Defendant failed to perform any of said conditions and, notwithstanding demands made upon him, he "wilfully and maliciously" withheld said ring "and has at all times refused and neglected to deliver up the same."
Although not mentioned in the complaint, Hamilton's affidavit further stated:
"I am informed by Albert A.F. McGee that he called the present place of employment of Sidney Schwadron on Thursday, June 20, 1963 and said Sidney Schwadron had not come to work that day, had not called in, and was otherwise unaccounted for thus showing an intention on the part of defendant to remove from the State of New Jersey."
Parenthetically, we note that such an assertion, which was corroborated by McGee, would not furnish a basis for the issuance of a capias in an action founded upon tort as contemplated by N.J.S. 2A:15-41(c). It was insufficient evidence to meet the statutory requirement of clause (c) that "defendant is a nonresident or is about to remove from the state." The mere conclusion of an affiant that an alleged debtor is about to abscond from the jurisdiction will not warrant the circumscription of human freedom. Clyde v. Parillo, 25 N.J. Misc. 492, 55 A.2d 810 (Sup. Ct. 1947). Compare Fidelis Factors Corp. v. DuLane Hatchery, Ltd., 47 N.J. Super. 132 (App. Div. 1957).
On the day the complaint and supporting affidavits were filed (June 26, 1963), a judge of the Superior Court, Law Division, judicially determined that plaintiff's "demand is founded in contract and that the said defendant fraudulently incurred said obligation." An order was thereupon entered that a writ of capias ad respondendum issue and that defendant be held to bail in the sum of $6,500.
*496 On July 1, 1963 Schwadron moved to quash the writ and discharge the bail order. At the hearing on the motion (July 8, 1963), defendant did not produce any testimony, by deposition or otherwise, as he is permitted to do under R.R. 4:66-3(a). The trial judge, temporarily assigned to the Superior Court, adjudicated that plaintiff's proofs did not establish that Schwadron had committed "a fraud as a ground under 2A:15-42," and accordingly he granted defendant's motion. On appeal, it is urged that the trial court erred in its disposition of defendant's motion and that the original order to hold to bail should be reinstated.
Plaintiff contends that a capias arrest is authorized by N.J.S. 2A:15-42(d) under circumstances where, as here, an action is based upon contract and the proofs establish "that defendant fraudulently contracted the debt or incurred the demand."
Schwadron argues that his challenged representations to plaintiff related only to the value of a particular article and that R.S. 46:30-18 (see Uniform Commercial Code N.J.S. 12A:2-313(2)) specifically provides, "No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty." That argument ignores the fact that the pending controversy is not predicated upon breach of warranty.
The primary transaction between the parties in litigation was an uncomplicated sale and purchase. Sometimes, in such commercial dealings, there is only a fine line between what may be considered statements of fact and statements which simply convey a vendor's opinion. We recognize the ancient maxim, simplex commendatio non obligat  mere recommendation does not bind  and note that the law does not proscribe ordinary "dealers' talk" or "puffing" of wares. There is, however, a growing unwillingness on the part of the court to allow statements to be made, without liability, "which are calculated to induce, and do induce, action on the part of the hearer." 3 Williston on Sales (rev. ed. 1948), § 628. p. 418. For a discussion of authorities contrasting statements of fact *497 and opinion, see Adams v. Peter Tramontin Motor Sales, 42 N.J. Super. 313, 318 (App. Div. 1956).
In the case at bar, we do not rest our decision upon Schwadron's initial representations.
There are early cases stating that an order to hold to bail for the fraudulent contraction of a debt must be supported by proof of a fraudulent intention at the time of contracting. Representative of that view are Vankirk ads. Staats, 24 N.J.L. 121 (Sup. Ct. 1853), and Brune v. Miskind, 11 N.J. Misc. 924, 926, 168 A. 832, 833 (Sup. Ct. 1933). But such a restrictive interpretation is not uniformly followed. In Jordan v. Hoffman, 126 N.J.L. 100, 104 (Sup. Ct. 1941), it was enunciated that the issuance of a capias pursuant to the provisions of the statute is not limited to situations where fraud is shown to exist at the time of the making of a contract, but rather, the statutory language is "broad enough to include those cases where, as here, the resultant fraud, although not proved to have existed at the inception of the contract, flows from the contract and becomes a component part thereof." In that case a quantity of shoes had been delivered on consignment. They were to be retained by the consignee pending sale, and were to be kept separate from his other stock in trade. The agreement contemplated that the consignee, upon selling the shoes, would deposit a percentage of the selling price to consignors' account in a designated bank. The consignee failed to do so and went into bankruptcy. The court, in determining that the consignee had been properly held to bail, said "the fraud may be considered as a component part of the original promise through which it became effective." This court approvingly cited the rationale of Jordan in the case of Seiden v. Fishtein, 44 N.J. Super. 370, 375-376 (App. Div. 1957); cf. Seidel v. Peschkaw, 27 N.J.L. 427 (Sup. Ct. 1859).
Although plaintiff's basic pleading and supportive documents are inarticulately drafted, they charge, in effect, a fraudulent conversion arising out of a bailment contract. After plaintiff had ascertained from an independent source *498 the true value of the diamond ring, he entrusted its return to the defendant upon specific and unrefuted terms and conditions with which Schwadron failed and refused to comply. Defendant's conversion of the ring to his own use, under such circumstances, was a resultant fraud which flowed from the bailment contract and constituted a component part thereof. Defendant is deemed to have fraudulently incurred plaintiff's demand within the intendment of N.J.S. 2A:15-42(d), a statutory provision compatible with our constitutional prohibition against imprisonment for a debt founded upon contract "unless in cases of fraud." N.J. Const. 1947, Art. I, par. XIII. Such humane protection under our fundamental law is intended to prevent incarceration of honest and unfortunate debtors but not those who are dishonest and fraudulent. See Ex parte Clark, 20 N.J.L. 648, 651 (Sup. Ct. 1846); Kulich v. Kertacy, 12 N.J. Misc. 743, 174 A. 503 (Sup. Ct. 1934); 5 Am. Jur.2d, Arrest, § 55, p. 746 (1962).
Schwadron's retention of both the diamond ring he sold and its purchase price, under the circumstances here presented, justified the issuance of a capias. He should not have been discharged from bail.
The matter is reversed and remanded for further proceedings consistent with this opinion. The bail, however, should not exceed $5,500, the true value of the diamond ring as claimed by plaintiff in his complaint.